IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| KAREN WANDOFF, o/b/o M.L.M., | |
| Plaintiff, | CIVIL ACTION NO.: 5:20-cv-103 |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

### REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Stacey L. Foster ("the ALJ" or "ALJ Foster") finding her grandchild, M.L.M. ("Claimant"), not disabled and ineligible for Child's Supplemental Security Income ("SSI"). Plaintiff urges the Court to reverse the ALJ's decision. Doc. 19 at 23–24. The Commissioner asserts the ALJ's decision should be affirmed. Doc. 20 at 23. I **RECOMMEND** the Court **AFFIRM** the ALJ's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

### BACKGROUND

On June 5, 2017, an application for SSI was filed on behalf of Claimant. R. 16.[1] On July 19, 2019, ALJ Foster held a hearing, at which Plaintiff and Claimant, represented by counsel,

---

[1] A transcript of the entire proceedings before the Social Security Administration appears at Document Numbers 15-1 through 15-9. Although the transcript is broken into multiple PDF documents, each with its own CM/ECF docketing number, the transcript bears individual page numbers that run sequentially through the entire transcript. Record citations in this Report (identified with "R.") are to the individual transcript page numbers. For efficiency, no reference to the CM/ECF docketing number or the respective PDF page numbers is provided here.

appeared and testified via video conference.  Id.  ALJ Foster denied Plaintiff's claims after the hearing in a decision issued on September 20, 2019.  R. 16–26.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1.

Claimant, born on December 22, 2007, was 9 years old at the time the application was filed and 11 years old at the time of the ALJ's decision in 2019.  R. 16.  The ALJ determined Claimant had the following severe impairments: hypotonia; insomnia; reactive attachment disorder; oppositional defiant disorder; anxiety disorder; attention deficit hyperactivity disorder ("ADHD"); fetal alcohol syndrome; and specific learning disorder in written expression.  R. 19.

**DISCUSSION**

**I.     The ALJ's Findings**

Section 1614(a)(3(C) of the Social Security Act sets forth the following special standard for determining whether a child is disabled:

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a three-step process to determine whether a child meets the definition of disability.  20 C.F.R. § 416.924(a); Coleman ex rel. J.K.C. v. Comm'r of Soc. Sec., 454 F. App'x 751, 752 (11th Cir. 2011).

The first step determines if the child has engaged in "substantial gainful activity." Coleman, 454 F. App'x at 752.  If the claimant is not engaged in such activity, then the second inquiry is whether the child has a severe impairment or combination of impairments.  Id.  If the child's impairment or combination of impairments is severe, then the evaluation proceeds to step three.

The third step requires a determination of whether the impairment or combination of impairment "meets, medically equals, or functionally equals a listed impairment." Id. At step three, the ALJ must evaluate the child's ability to function in six different "domains." Id.; 20 C.F.R. § 416.926a. These six domains include: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a. A child is disabled if he has a "marked" limitation in two of these domains or an "extreme" limitation in one domain. Id. A "marked" limitation seriously interferes with the child's ability to initiate, sustain, or complete activities. Id. An "extreme" limitation very seriously interferes with the child's ability to initiate, sustain, or complete activities. Id. When considering whether a limitation is marked or extreme the ALJ should compare the claimant's limitations to the typical functioning of other children in the same age group who do not have impairments. Id.

Here, the ALJ followed this sequential process to determine Claimant had not engaged in substantial gainful activity since June 5, 2017, the application date. R. 19. At step two, the ALJ determined Claimant had the following severe impairments: hypotonia; insomnia; reactive attachment disorder; oppositional defiant disorder; anxiety disorder; ADHD; fetal alcohol syndrome; and specific learning disorder in written expression. Id. However, at the third step, the ALJ determined Claimant's impairments did not meet or medically equal the severity of a listed impairment. Id. The ALJ determined Claimant had less than "marked" limitations in all six of the functional equivalence domains. R. 20–25. Because the ALJ determined Claimant did not have "marked" or "extreme" limitations in any of the domains, the ALJ concluded Claimant was not disabled. R. 26.

**II.     Issues Presented**

Plaintiff asserts the ALJ erred because (1) substantial evidence does not support the ALJ's analysis of the medical opinion evidence, and (2) the ALJ inadequately considered the Claimant's borderline age category situation.[2]

**III.    Standard of Review**

It is well-established judicial review of social security cases is limited to whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a

---

[2]  Plaintiff filed a Notice of Supplemental Authority, which points to Collins v. Yellen, 141 S. Ct. 1761 (2021), and includes an Office of Legal Counsel Memorandum concerning the constitutionality of statutory restrictions on the President's ability to remove the Social Security Administration Commissioner from that position. Doc. 25; Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. __ (July 8, 2021). Plaintiff states this authority bears on "the constitutionality of the Commissioner's decision" in this case. Doc. 25. It is unclear why Plaintiff filed this Notice of Supplemental Authority. Neither party raised any issue concerning the constitutionality of the Commissioner's appointment or decision in the briefing. Plaintiff's Notice fails to take any position or advance any argument, simply observing the authority is related to the constitutionality of the Commissioner's decision. Having reviewed the provided authority, I cannot discern how the authority is germane to any of the issues presented in this case. Accordingly, I do not address Plaintiff's Notice of Supplemental Authority any further.

scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.  Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.    Whether the ALJ Erred in the Medical Opinion Analysis**

Plaintiff argues the ALJ failed to adequately analyze opinions from Claimant's treating psychologist, Dr. Engen, and state agency psychological consultants.  Doc. 19 at 8.  Specifically, Plaintiff contends the ALJ should have given more weight to these sources' opinions and concluded that Claimant had marked limitations in certain functional equivalence domains.  Plaintiff further argues the ALJ failed to properly consider the longitudinal record, which included records from 2018 and 2019.  Id. at 8–20.  In response, the Commissioner argues the ALJ appropriately evaluated the medical opinions under new Regulations and her assessment is supported by substantial evidence.  Doc. 20 at 15–16.  Plaintiff submitted a reply brief, arguing the ALJ failed to adequately address the medical opinions even under the new regulatory framework.  Doc. 23 at 2.

### A.    The ALJ Appropriately Evaluated the Medical Opinions

An ALJ considering medical opinions "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a); see Works v. Saul, No 4:19-CV-1515, 2021 WL 690126, at *15, 24 (N.D. Ala. Feb. 23, 2021).[3] Instead, "when evaluat[ing] the persuasiveness of medical opinions," the ALJ "will consider those medical opinions . . . using the factors listed . . . the most important factors . . . [being] supportability . . . and consistency." 20 C.F.R. § 416.920c(b)(2) (other factors include relationship between the source and the claimant, the source's specialization, and "other factors"). The controlling regulation provides some guidance to ALJs on the "supportability" and "consistency" factors. 20 C.F.R. § 416.920c(c)(1)–(2). "Supportability" is a measure of how much a medical opinion is supported by objective medical evidence and explanations provided by the medical source giving the opinion. See 20 C.F.R. § 416.920c(c)(1). "Consistency" is a measure of how consistent the medical opinion is with evidence from other sources (medical and nonmedical). See 20 C.F.R. § 416.920c(c)(2). Opinions that have a high degree of "supportability" and "consistency" are deemed more persuasive. 20 C.F.R. § 416.920c(c)(1)–(2).

The ALJ must articulate how supportability and consistency "were considered for a medical sources opinion, but an ALJ is not required to articulate consideration of the remaining factors." Anthony v. Kijakazi, CV 120-110, 2021 WL 4304725, at *3 (S.D. Ga. Sept. 3, 2021)

---

[3]    On January 18, 2017, the Social Security Administration substantially revised the Regulations governing how the Commissioner considers medical evidence, including medical opinions. See 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). Those revisions apply to claims filed on or after March 27, 2017, and are therefore applicable in this case. Compare 20 C.F.R. § 416.920c (applicable to claims filed on or after on or after March 27, 2017) with 20 C.F.R. § 416.927 (applicable to claims filed before March 27, 2017).

(citing 20 C.F.R. §416.920c(b)(2) and Uresi v. Comm'r of Soc. Sec., No. 2:20-CV-367, 2021 WL 2644549, at *4 (M.D. Fla. June 28, 2021)).  The ALJ must "provide sufficient detail concerning the degree to which he finds a medical source's opinion persuasive so that a reviewing court may understand the ALJ's analysis." Works, 2021 WL 690126 at *15 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011)); see Jackson v. Soc. Sec. Admin., Comm'r, 779 F. App'x 681, 684 (11th Cir. 2019).  However, it should be noted an ALJ is not "required to articulate how [she] considered each medical opinion" nor is she required to "articulate how [she] considered evidence from nonmedical sources" in the manner she considers medical opinions.  20 C.F.R. § 416.920c(b)(1), (d).  A medical source who provides multiple medical opinions can be examined in a single analysis.  20 C.F.R. § 416.920c(b)(1).  As with all conclusions, the ALJ's conclusions regarding medical source opinions must be supported by substantial evidence in the record.  Buckwalter v. Acting Comm'r of Soc. Sec., 5 F.4th 1315, 1320 (11th Cir. 2021) (citing Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004)).[4]

Here, the ALJ conducted a lengthy analysis of each functional equivalence domain, considering several different aspects of the record, and found no more than moderate limitations in each domain.  R. 20–26.  Once she evaluated each of the functional domains, the ALJ explained why she discounted the medical opinions of Dr. Engen and the opinions of the State Agency consultants.  R. 26.  Plaintiff challenges the ALJ's conclusions in the functional domains

---

[4]   In revising the Regulations to remove the treating source rule, the Social Security Administration explained, "[U]nder the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether *substantial evidence* supports our final decision[.]"  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (emphasis added).  Accordingly, nothing in the revised Regulations alters the requirement the ALJ's decisions be supported by substantial evidence.

because, Plaintiff contends, the ALJ improperly discounted the opinions of Dr. Engen and the state agency doctors. Doc. 19 at 12.

Having considered the parties' arguments and the ALJ's opinion in its entirety, I conclude the ALJ correctly articulated the persuasiveness she attributed to opinions from Dr. Engen, as required by the governing Regulations, and the ALJ reached conclusions supported by substantial evidence. The ALJ noted:

> [T]reating psychologist Brendan C. Engen, Psy.D., completed an assessment at Exhibit 38F suggesting the claimant to have some serious or very serious problems in various functional areas. Yet, the overall treatment record does not appear to reasonably support or be consistent with a marked or extreme degree of impairment on a sustained basis. For instance, on October 15, 2018, Dr. Engen noted the claimant to appear to be functioning fairly well emotionally and behaviorally. (Exhibit 24F/2). Dr. Engen has also previously indicated the claimant to be stable and to have a good mood. (Exhibit 39F/1). Consequently, Dr. Engen's medical source statement is found to be unpersuasive.
>
> In addition, as reflected at Exhibits 23F, 30F, and 40F, I note that other medical providers have suggested that the claimant requires some accommodations at school. However, such suggestions can generally be said to be reasonable recommendations of things that should be afforded to the claimant to optimize his ability to succeed in an academic setting. In any event, they clearly do not denote a marked or greater degree of functional impairment than what has previously been determined in the instant decision.

R. 26. The ALJ appropriately analyzed the various opinions of Dr. Engen by looking to Dr. Engen's notes in the record to determine the supportability of his opinion and highlighting the records which contradict his medical opinion, such as those which indicated the Claimant had been exhibiting stable moods and functioning well behaviorally and emotionally.

The ALJ also discussed the consistency of the opinion by comparing Dr. Engen's with the other medical evidence in the record. Plaintiff complains the ALJ did not discuss additional contrary evidence in Dr. Engen's notes and focused only on two observations out of a treatment period of eight years. Doc. 19 at 8–9. However, the ALJ is not required to articulate the

persuasiveness of each separate opinion from a single medical source. See 20 C.F.R. § 416.920c(b)(1). Additionally, the ALJ's conclusion regarding Claimant's limitations is supported by substantial evidence. Several different notes in Dr. Engen's treatment file indicate Claimant's stable progress beyond those already cited by the ALJ. See R. 861–66. While there are also treatment notes in Dr. Engen's file indicating Claimant had sessions indicating some difficulty in certain functional areas, substantial evidence supports the ALJ's conclusion that Dr. Engen's opinions were unpersuasive and conclusions regarding Claimant's limitations in the functional domains. The ALJ did not err in considering Dr. Engen's opinion.

As to the state agency psychologists, the psychologists opined Claimant had a marked limitation in the domain of caring for oneself, but the ALJ found those opinions to be less than persuasive. R. 26. The ALJ determined the rating was made "based on the claimant's ability to regulate his emotions"; however, she found "the evidence considered in its entirety, including the evidence received at the hearing level, is not fully supportive of or consistent with such a level of restriction." Id. The ALJ further explained, "Claimant now appears to be functioning fairly well at school with no major disciplinary events." Id. The ALJ's discussion of these opinions adequately articulates her consideration of the opinions under the controlling Regulations. See 20 C.F.R. § 416.920c.

Regarding the consistency factor, the ALJ mentioned the "evidence considered in its entirety" is not consistent with the limitation proposed by the state agency psychologists. It is difficult to discern, from this single portion of the opinion, "the evidence" to which the ALJ is referring. However, considering earlier portions of the opinion, where the ALJ discussed records related to Claimant's performance at school and disciplinary issues, it is clear the ALJ found the

9

state agency psychologists' opinions to be inconsistent with those other records, and that was the ALJ's reason for finding the opinions less persuasive.

Regarding the supportability factor, the ALJ was required to consider the degree to which the objective medical evidence and supporting explanations provided by the psychologists supported their opinion Claimant had a marked limitation in caring for himself.  The ALJ explained the psychologists' opinions "appear to be based on the claimant's ability to regulate his emotions."  R. 26.  Although additional reasons were provided by the psychologists, the psychologists did attribute this limitation with Claimant's difficulties in "handling frustration appropriately, being patient, using good judgment, etc."  See R. 100, 127.  Thus, the ALJ plainly considered the explanations the psychologists offered in support of their opinions.  The ALJ, however, rejected the psychologists' opinions because the evidence in the record showed Claimant "now appears to be functioning fairly well at school with no major disciplinary events."  Earlier in her opinion, the ALJ cited evidence in the record to support the conclusion that Claimant appeared to be functioning fairly well and had no disciplinary events.  Therefore, the ALJ considered both the state agency psychologists' explanations for their opinions and whether evidence in the record support the opinions, and, accordingly, adequately articulated her consideration of the supportability factor for the opinions offered by these sources.[5]

Even if the ALJ had erred in her consideration the state agency psychologists' opinions, any error would be harmless, so remand is not required.  See Zoslow v. Comm'r of Soc. Sec., 778 F. App'x 762, 764 (11th Cir. 2019) (citing Shinseki v. Sanders, 556 U.S. 396, 407 (2009))

---

[5]     To be clear, the ALJ's articulation of the consistency and supportability factors with regards to the state agency psychologists' opinions is terse, at best.  Clearer and more detailed articulations of these factors are desirable and assist the Court in conducting its review.  However, the Court is only tasked with determining whether the ALJ satisfied the requirements of the Regulations and whether the ALJ's conclusions are supported by substantial evidence.  Here, the ALJ satisfied the Regulations and her conclusions are supported by substantial evidence.

(noting a court should not overturn a decision for an error which "do[es] not affect the parties' substantial rights").  A child is disabled if he has a "marked" limitation in two of the six functional domains or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a.  The state agency consultants only found a marked level of restriction in a single domain—the domain of caring for oneself.  R. 26.  Therefore, even if the ALJ accepted the consultants' opinions fully, Claimant would have only had one marked limitation, and the ALJ still would have concluded Claimant was not disabled.

### B. The ALJ Appropriately Considered the Longitudinal Evidence

Plaintiff further argues the ALJ did not appropriately consider the longitudinal evidence, since the ALJ only highlighted positive reports from many years of Dr. Engen's notes and did not fully consider other education evidence in the record such as the educational questionnaire completed by Claimant's third grade teacher in 2017.  Doc. 19 at 12, 14, 18–20.  As discussed above, the ALJ appropriately considered Dr. Engen's records by discussing the supportability and consistency of his opinion.  The ALJ was not required to articulate how she considered each medical opinion Dr. Engen produced, since all the opinions came from the same medical source.  See 20 C.F.R. § 416.920c(b)(1).  Furthermore, substantial evidence in the record supports the ALJ's finding about Dr. Engen's medical opinion.

As for the educational questionnaire completed by Claimant's third-grade teacher and other documents from teachers, an ALJ is "not required to articulate how [she] considered evidence from nonmedical sources" in the same way as required for medical opinions.  20 C.F.R. § 416.920c(d).  An ALJ is not required to "specifically refer to every piece of evidence in [her] decision" so long as the decision is not a broad rejection "which is not enough to enable [a reviewing court] to conclude that the ALJ consider [the claimant's] medical condition as a

11

whole." Mitchell v. Comm'r of Soc. Sec., 771 F.3d 780, 783 (11th Cir. 2014) (quoting Dyer, 395 F.3d at 1211). Here, it is clear the ALJ did consider the medical condition as a whole and considered the 2017 questionnaire specifically. The ALJ noted the 2017 questionnaire when discussing Claimant's limitations in acquiring and using information but concluded a subsequent 2018 teacher questionnaire indicated improvement. R. 21. The ALJ similarly considered a report about Claimant's threat to stab another student, thoroughly explaining why this one report did not overwhelm the other evidence that showed Claimant could adequately function around others with the help of medication and therapy. R. 23. These conclusions are supported by substantial evidence. Thus, I find the ALJ appropriately considered the longitudinal record when making her disability determination.

## V.     Whether the ALJ Erred in Not Considering a Borderline Age Category

Plaintiff argues the ALJ erred in not considering Claimant's borderline age category situation when determining how Claimant's impairments limited his ability to function age-appropriately in each domain. Doc. 19 at 21. The Commissioner argues an examination of a borderline age category is not applicable to the child SSI evaluation and, instead, is limited to the adult sequential evaluation process. Doc. 20 at 21.

In reply, Plaintiff asserts the Regulations' silence on borderline age category issues for children does not mean those situations do not exist. Doc. 23 at 3. Plaintiff also argues the facts of the case present a unique situation which require the Court to consider Claimant being within three months of his twelfth birthday at the time of the ALJ's decision. Id.

For a child SSI application, the effects of a claimant's impairments are evaluated in comparison to children the claimant's same age who do not have impairments. 20 C.F.R. § 416.924a(b)(3)(i). The Regulations pertaining to age as an evaluation factor for children's SSI clarify "except in the case of certain premature infants . . . . age means chronological age."

20 C.F.R. § 416.924b(a)(1). While a child born prematurely may be considered younger than chronological age given the right circumstances, the Regulations inform all other children they will be compared to "children your age who do not have impairments." 20 C.F.R. § 416.924b. No exceptions are provided in the Regulations for borderline age situations in children, unlike in adult SSI applications. See 20 C.F.R. §§ 404.1563(b) & 416.963(b).

Plaintiff has not cited any authority showing a borderline age consideration should be applied to a child's SSI application or shown Claimant's situation requires deviation from the Regulations. The ALJ appropriately compared Claimant to children of his age without impairments as the law requires, and the ALJ's findings are supported by substantial evidence. Since no reversible error has been found in the ALJ's opinion, I **RECOMMEND** the Court **AFFIRM** the ALJ's decision.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the ALJ's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to

file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 16th day of February, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA